IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD GOTZON, JR.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 06-2928 |
| | : | |
| **PRIME-CARE HEALTH** | : | |
| **SERVICES et al** | : | |

**Diamond, J.**                                                                                    **October 30, 2007**

## MEMORANDUM

Plaintiff Edward Gotzon, Jr., acting pro se, filed a Complaint on July 5, 2006 alleging deliberate indifference to his medical needs. 42 U.S.C. § 1983. Represented by appointed counsel, Plaintiff filed an Amended Complaint on April 5, 2007, adding claims based on medical malpractice, negligence, and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. Plaintiff names as Defendants PrimeCare Medical, the County of Lehigh, Lehigh County Prison Administration, and several individuals employed by these entities. Defendants have moved for summary judgment. I grant Defendants' Motions.

**I.    LEGAL STANDARDS**

Upon motion of any party, summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c). Summary judgment may be granted only if the movant shows that "there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). An issue is

1

"genuine" if a reasonable jury could possibly hold in the nonmovant's favor with regard to that issue.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it could affect the result of the suit under governing law.  Id.

In deciding whether to grant summary judgment, the district court "must view the facts in the light most favorable to the non-moving party," and take every reasonable inference in that party's favor.  Hugh v. Butler County Family YMCA, 418 F.3d 265 (3d Cir. 2005).  If, after viewing all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 83 (3d Cir. 1987).

The opposing party must support each essential element with concrete evidence in the record.  See Celotex, 477 U.S. at 322-23.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted).  This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."  Walden v. Saint Gobain Corp., 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (restating Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976)).

## II. BACKGROUND

In describing the background of this case, I have set out those record facts that are undisputed, and construed them in the light most favorable to Plaintiff.  I have disregarded those

2

factual allegations that Plaintiff makes without any evidentiary support.  See Celotex, 477 U.S. at 322-23; Jones, 214 F.3d at 407.  I have accepted as true all other factual allegation made by Plaintiff and construed those allegations in the light most favorable to Plaintiff.

**Plaintiff's Incarceration, Diagnosis, and Treatment**

Mr. Gotzon began his incarceration at Lehigh County Prison on March 17, 2006.  (Doc. No. 114 Ex. E.)  Pursuant to a contract with Defendant Lehigh County, Defendant PrimeCare provided medical services at the Prison.  (Haskin Dep. at 31-34.)  The individual Defendants in the case were allegedly responsible for Plaintiff's medical care during his incarceration.

Plaintiff has Type II hyperglycemic diabetes, for which he has received medical treatment since at least 2002.  (Doc. No. 113 Ex. A at 2.)  Hyperglycemic diabetics make insufficient insulin, and so have elevated blood glucose levels.  (Braunstein Dep. at 22-23.)  Extended periods of blood glucose elevation can damage the patients's eyes, kidneys, nerve endings, blood vessels, and heart.  (Id. at 22-23.)

Diabetics are susceptible to open sores on their lower extremities – sores that heal with difficulty.  (Braunstein Dep. at 15-16.)  Among the treatments available for patients with foot sores are shoes with thicker soles.  (Id. at 106-108.)

A medical intake was performed when Plaintiff was incarcerated, and he notified the Prison medical staff that he was a diabetic.  (Doc. No. 114 Ex. F at ¶ 8.)  When he entered the Prison, Plaintiff's blood glucose level was significantly elevated with a sugar value of 406 milligrams per deciliter – twice the level considered acceptable for diabetics.  (Doc. No. 114 Ex.

3

E; Braunstein Dep. at 21-22.)  Medical staff placed him on glucophage, the same medication he had been prescribed before his incarceration.  (Doc. No. 113 Ex. A at 3.)  The Medical Department also gave Plaintiff insulin shots when his glucose levels were high.  (Id.)

### The Improvement in Plaintiff's Condition

Over the ensuing months, Plaintiff's blood glucose levels improved.  (Doc. No. 113 Ex. A at 3.)  After six months of incarceration, his A1C tests (which measure blood glucose control over the previous three months) showed significant improvement.  (Id. at 4.)  After a year of incarceration, all his A1C results were in the normal range.  (Id. at 4; Ex. B at 37.)  For most patients, a drop in glucose over a three to six month period following medication is considered a good clinical result.  (Braunstein Dep. at 23-24.)

Before incarceration, Plaintiff wore prescribed diabetic sneakers with molded soles to help prevent foot sores.  (Gotzon Aff. at ¶ 4.)  Upon incarceration, he was required to relinquish these shoes, along with his other personal items.  (Id.)  His prison-issue clothes included a pair of "Keds" sneakers – flat, loafer-type shoes with thin soles.  (Id. at ¶ 6.)

In April, 2006, Plaintiff's feet began to swell, causing the Keds to rub his feet.  (Gotzon Aff. at ¶ 14.)  In May, 2006, Plaintiff developed sores and ulcers on his feet, eventually causing shallow breaks in the skin.  (Id.; Braunstein Dep. at 99-100.)  The Medical Department provided soaks and creams for the sores, water pills for the swelling, and antibiotics to prevent infections.  (Gotzon Aff. at ¶ 17; Doc. No. 114 Ex. H; Braunstein Dep. at 98-99.)  His prescribed sneakers were returned to him in August, 2006 – approximately four months after his feet began to swell.

Since then, the sores have improved.  (Gotzon Aff. at ¶¶ 18-19.)

### Impartial Expert's Opinion

On May 25, 2007, I granted Plaintiff's Motion for Appointment of an Impartial Medical Expert.  (Doc. No. 59.)  Plaintiff nominated Dr. Seth Braunstein; Defendants did not object.  (Doc. No. 78.)  For 35 years, Dr. Braunstein has taught at the University of Pennsylvania School of Medicine, where he specializes in the treatment of diabetic patients.  (Braunstein Dep. at 12-13.)  On June 27, 2007, I appointed Dr. Braunstein to serve as an impartial expert and advise me regarding Plaintiff's medical care and treatment during incarceration.  (Id.)  See Fed. R. Evid. 706; Ford v. Mercer County Corr. Ctr., 171 Fed. Appx. 416, 420  (3d Cir. 2006).

Dr. Braunstein submitted his report on July 28, 2007.  (Doc. No. 113 Ex. A.)  He determined that Plaintiff "received effective and appropriate therapy for his diabetes while in Lehigh Prison," and that his skin lesions were appropriately treated.  (Id.)  Dr. Braunstein concluded:

> It is my opinion with a reasonable degree of medical certainty that Mr. Gotzon received care that meets the standards for the community at large.  I do not believe that he has suffered any untoward consequences of his care . . . I do not believe any of the issues in his complaint are justified or are of concern.

(Id.)

### Plaintiff Abandons Several of His Claims

Plaintiff has not offered any medical expert to contradict Dr. Braunstein (the medical expert Plaintiff asked me to appoint).  Rather, Plaintiff concedes that "many of the claims in [his] Amended Complaint are no longer tenable in light of the information uncovered during

5

discovery." (Doc. No. 112 at 8.) Plaintiff now asserts only his § 1983 claim for deliberate indifference to medical needs and his state law negligence claim.

## III.   DISCUSSION

### A.   Deliberate Indifference

The Eighth Amendment prohibition against cruel and unusual punishment imposes a duty on prison officials to provide adequate medical treatment to inmates. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Estelle v. Gamble, 429 U.S. 97 (1976). To demonstrate a violation of this duty, the inmate must show that: (1) prison officials were deliberately indifferent to his medical needs; and (2) his medical needs were serious. Id.

The Third Circuit has held that "prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer v. O'Carroll, 991 F.2d 64, 67 (3d Cir. 1993); see Foreman v. Bureau of Prisons, 2007 WL 108457, at *3 (3d Cir. Jan. 16, 2007) ("[A]n inmate's disagreement with prison personnel over the exercise of medical judgment does not amount to an Eighth Amendment violation."). The Court has also held that negligent medical care provided by prison authorities does not constitute deliberate indifference. Rouse, 182 F.3d at 197; Durmer, 991 F.2d at 67. Thus, to violate the Eighth Amendment, prison authorities must act with some degree of intentionality: they "must both be aware of facts [respecting the inmate's medical condition] from which the inference could be drawn that a substantial risk of harm [to the inmate] exists, and [they] must also draw that inference." Farmer, 511 U.S. at 837.

To survive a motion for summary judgment, an inmate bringing a claim of deliberate

indifference "must present enough evidence to support the inference that defendants 'knowingly and unreasonably disregarded an objectively intolerable risk of harm.'" <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 132 (3d Cir. 2001) (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 846 (1994)). Deliberate indifference may be shown where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; (3) prevents a prisoner from receiving needed or recommended medical treatment; (4) persists in a course of treatment in the face of resultant pain and risk of injury. <u>Rouse</u>, 182 F.3d at 197.

Plaintiff alleges that Defendants were deliberately indifferent to his medical needs because they unnecessarily delayed both in bringing about an improvement in his hyperglycemia and in returning his diabetic sneakers. This amounts to little more than a disagreement with Defendants' medical decisions, and so cannot survive summary judgment. <u>See</u> <u>Durmer</u>, 991 F.2d at 67 (prison officials are afforded latitude in treatment and diagnosis).

**Diabetes**

The record is undisputed that Defendants began treating Plaintiff's diabetes from the outset of his incarceration. Indeed, Plaintiff concedes that the Prison's medical staff saw him "virtually every day for his diabetes care and management." (Doc. No. 112 at 7.) It is also undisputed that there was significant improvement in Plaintiff's A1C results after six months of treatment by Defendants, and that his blood glucose levels were completely within the normal range after a year of such treatment. Dr. Braunstein testified that in normal circumstances, a

reduction in blood glucose levels over a period of three to six months – such as the reduction experienced by Plaintiff – would be a "good clinical result," because treatment "can't necessarily bring the sugar down abruptly." (Braunstein Dep. at 24.)  Similarly, Plaintiff states that, "[a]dmittedly, medical treatment plans need time to take effect."  (Doc. No. 112 at 14.)

Plaintiff nonetheless argues that because while incarcerated he saw a doctor more frequently than most diabetic patients who are not in prison, his blood glucose levels should have been reduced more quickly.  In Plaintiff's view, Defendants should have used their frequent examinations to ensure that his "treatment plan was successful inside of three months." (Doc. No. 112 at 14.)

I am at a loss to see how Defendants' frequent examinations of Plaintiff amount to "deliberate indifference."  Indeed, they show just the opposite.  It is undisputed that the care Defendants afforded Plaintiff met the standards for the community at large; the reduction in his blood glucose levels was consistent with "a good clinical result."  (See Braunstein Dep. at 24.) His desire for more rapid improvement does not implicate the Eighth Amendment.  See Foreman v. Bureau of Prisons, 2007 WL 108457 at *3 ("disagreement over the proper treatment does not amount to a constitutional violation").

**Foot Sores And Ulcers**

Plaintiff alleges that Defendants' refusal from April to August 2006 to provide him with his prescribed sneakers constituted deliberate indifference:

8

> [T]his delay is the type of deliberate, unnecessary, wanton, callous, cruel, unusual, intentionally injurious and barbarous conduct the Eighth Amendment prohibits.

(Doc. No. 112 at 12.)  The record does not remotely support Plaintiff's heated prose.  There is no evidence that Plaintiff's sneakers were medically necessary either to prevent or treat Plaintiff's foot sores.  On the contrary, Dr. Braunstein testified without contradiction that diabetic shoes do not offer significant benefits for most diabetic patients, and that the other forms of treatment Defendants provided for Plaintiff's foot ulcers were appropriate and consistent with the standard of care for the community at large.  (Braunstein Dep. at 106.)

Moreover, there is no evidence that Defendants knowingly disregarded a substantial risk of harm that might result from a delay in the return of Plaintiff's sneakers.  See Counterman v. Warren County Corr. Facility, 176 Fed. Appx. 234, 238 (3d Cir. 2006) (plaintiff must present evidence sufficient to raise the inference that prison official knowingly disregarded risk of serious harm).  Rather, uncontradicted evidence that Defendants provided numerous, medically sound treatments for Plaintiff's foot sores shows just the opposite.  Simply because Plaintiff's sneakers ultimately proved to be more effective than other forms of treatment does not establish that Defendants violated the Eighth Amendment because they first prescribed these other treatments.  See Durmer, 991 F.2d at 67 (prison officials are afforded latitude in treatment and diagnosis).

### B.  Negligence

Plaintiff also alleges that Defendants were negligent under Pennsylvania law because they

9

did not bring about an improvement in his condition quickly enough.  Because this negligence claim sounds in medical malpractice, Plaintiff was required to submit expert evidence to establish his claim.  Because he has failed to do so, I am obligated to dismiss his claim.

I must characterize a claim of negligence as one of professional liability where "it is predicated upon facts constituting medical treatment, that is, when it involves diagnosis, care and treatment by licensed professionals."  Yee v. Roberts, 878 A.2d 906, 912 (Pa. Super. Ct. 2005).  If a negligence claim is thus properly characterized as a claim of professional liability, the requirements for medical malpractice claims apply.  Ditch v. Waynesboro Hosp., 917 A.2d 317, 322 (Pa. Sup. Ct. 2007).

To make out a claim for medical malpractice under Pennsylvania law, a plaintiff must show that: (1) the physician owed the patient a duty of care; (2) the physician breached the duty; (3) the breach caused the harm suffered; and (4) the damages were a direct result of the harm.  Toogood v. Owen J. Rogal, D.D.S., P.C., 824 A.2d 1140, 1145 (Pa. 2003).  Unless "the matter is so simple or the lack of skill or care so obvious as to be within the range of experience and comprehension" of a lay person, a plaintiff must submit expert evidence to show breach and causation.  Id.  (quoting Hightower-Warren v. Silk, 988 A.2d 52, 54 n.1 (Pa. 1997)).  See also Pa. R. Civ. P. 1042.3 (requiring a certificate of merit from an appropriate licensed professional for professional liability actions).

Plaintiff's negligence claim unquestionably sounds in medical malpractice.  He attacks the medical care and treatment Defendants provided for his diabetes.  Moreover, the medical

10

issues Plaintiff raises – questioning the efficacy and dosage amounts of glucophage, insulin, water pills, antibiotics, and other medicines Defendants prescribed – are not so simple that a lay jury could be expected to evaluate them without expert testimony.  Plaintiff's failure to provide any expert evidence to support his state law negligence claim thus renders the claim insufficient as a matter of Pennsylvania law.  See Toogood, 824 A.2d at 1145; Pa. R. Civ. P. 1042.3.

## IV. CONCLUSION

The impartial expert that Plaintiff asked me to appoint has confirmed – without contradiction – that Defendants afforded Plaintiff adequate medical care.  In these circumstances, because Plaintiff has not made out legally cognizable claims for deliberate indifference or negligence, I grant Defendants' Motions for Summary Judgment.  An appropriate Order follows.

BY THE COURT.

*/s Paul S. Diamond*

_____

Paul S. Diamond, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWARD GOTZON, JR.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 06-2928 |
| | : | |
| **PRIME-CARE HEALTH** | : | |
| **SERVICES et al** | : | |

## ORDER

AND NOW, this 30th day of October, 2007, it is ORDERED that:

(1) Defendants' Motions for Summary Judgment (Doc. No. 105; Doc. No. 106; Doc. No. 107; Doc. No. 109; Doc. No. 130) are **GRANTED**;

(2) JUDGMENT IS ENTERED in favor of Defendants and against Plaintiff;

(3) The Clerk shall close this case for statistical purposes.

IT IS SO ORDERED.

*/s Paul S. Diamond*

_____

Paul S. Diamond, J.